PEOPLE v PAINTMAN

PEOPLE v CONKLIN

Docket Nos. 63894, 62908. Argued March 3, 1981 (Calendar Nos. 4, 5). —Decided February 1, 1982. Certiorari denied as to *Paintman* by the Supreme Court of the United States on May 24, 1982.

Norman Paintman was convicted by a jury in Oakland Circuit Court, William John Beer, J., of first-degree murder. The trial court had granted the defendant's pretrial motion to suppress a statement he gave to the police, three days after his arrest and after he twice unsuccessfully asserted his right to counsel, on the ground that it was involuntary; however, the Court of Appeals, in an interlocutory appeal by the prosecuting attorney, reversed the order to suppress and the statement was introduced in evidence. The Court of Appeals, Danhof, C.J., and V. J. Brennan and Carroll, JJ., affirmed the defendant's conviction on the ground that its interlocutory order controlled the admissibility of the statement (Docket No. 77-3436). The defendant appeals.

Raymond Conklin, Jr., was convicted by a jury in Monroe Circuit Court, James J. Kelley, Jr., J., of armed robbery. The trial court denied the defendant's pretrial motion to suppress a confession he gave sheriff's officers nine days after his arrest and initial request for the assistance of counsel and seven days after his arraignment, although the officers knew that defendant was represented by counsel at the time he confessed but did not contact the attorney. The Court of Appeals, R. B. Burns, P.J., and D. F. Walsh and Clements, JJ., affirmed in an unpublished per curiam opinion (Docket No. 77-688). The defendant appeals.

In a unanimous opinion by Justice Fitzgerald, the Supreme Court *held:*

The defendants' convictions are reversed and remanded for

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 21A Am Jur 2d, Criminal Law §§ 758-763, 788-803, 974, 988-992.

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

[6] 29 Am Jur 2d, Evidence §§ 545-549, 555-557.

new trials, at which the statements made without the requested assistance of counsel may not be admitted.

1. The Supreme Court of the United States has emphasized the importance of the right to counsel during custodial interrogation. Although the accused may waive such rights, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel. An accused who has expressed the desire to invoke the right to counsel is not subject to further interrogation by the police until counsel has been made available, unless the accused himself initiates further communication, exchanges, or conversations with the police.

2. Waivers of counsel must not only be voluntary, but must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. The two questions are discrete inquiries, and a valid waiver cannot be established merely by showing that an accused who has asked for an attorney responded to further custodial interrogation initiated by the police even after he has been advised of his rights. The lawyer is the protector of the rights of the accused in his dealings with the police and courts. Therefore, the Supreme Court of the United States has fashioned the rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring all interrogation to cease.

3. In these cases, the defendants requested counsel when they were questioned by the police after their arrests. They again asked for attorneys when they were arraigned. A tape-recorded statement by an alleged accomplice was played for Paintman before he confessed, and Conklin was placed in a room with his younger alleged accomplice before his statement; he had discussed with the sheriff's officers the possibility of leniency for the accomplice. Paintman was a heroin addict who suffered withdrawal symptoms in the days preceding his statement. He was the target of derisive comments from inmates and employees of the jail because one of the victims was a young child, and there was testimony about his suicidal mood. He also told employees of the jail that he did not wish to talk to the police. Conklin was placed in a line-up the day after his arrest and spent most of his time in solitary confinement following his request for an attorney until after he confessed.

4. The Fifth and Fourteenth Amendments require a clear demonstration of waiver of the right to counsel. Such clarity is not apparent when an accused's request for counsel is met by silence or inaction for a matter of days, or when the request is followed by a move to solitary confinement, no matter what the reason. The facts of these cases do not fulfill the spirit or

comport with the policies of the decisions of the Supreme Court of the United States. Neither Paintman nor Conklin initiated the conversations from which their inculpatory remarks emerged. The statements came after the defendants expressly requested counsel and were subjected to custodial interrogation. It is inconsistent with the case law for the police to instigate interrogation of an accused in custody who has clearly asserted the right to counsel. The sheriff's officers were aware that counsel had been appointed to represent Conklin and had filed an appearance. Paintman had expressed his desire to speak with an attorney in response to a question by the chief assistant prosecutor, who then left, but the police continued to talk with the defendant. The use of the confessions against the defendants at trial violated their rights under the Fifth and Fourteenth Amendments; therefore, the convictions are reversed and the cases are remanded for new trials.

Reversed and remanded.

92 Mich App 412; 285 NW2d 206 (1979) reversed.

1. CRIMINAL LAW — ASSISTANCE OF COUNSEL — WAIVER — CUSTODIAL INTERROGATION.

An accused may waive his constitutional rights during custodial interrogation, but the Supreme Court of the United States has strongly indicated that additional safeguards are necessary when the accused asks for counsel (US Const, Ams V, XIV).

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL — CUSTODIAL INTERROGATION — WAIVER.

An accused who has expressed the desire to invoke the right to counsel is not subject to further interrogation by the police until counsel has been made available, unless the accused himself initiates further communication, exchanges, or conversations with the police (US Const, Ams V, XIV).

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL — WAIVER — CUSTODIAL INTERROGATION.

Waivers of counsel must not only be voluntary, but must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege; the two questions are discrete inquiries, and a valid waiver cannot be established merely by showing that an accused who asked for an attorney responded to further custodial interrogation initiated by police officers even after he had been advised of his rights (US Const, Ams V, XIV).

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL — CUSTODIAL INTERRO-
   GATION.

The lawyer is the protector of the rights of the accused in his
dealings with the police and courts; therefore, the Supreme
Court of the United States has fashioned the rigid rule that an
accused's request for an attorney is per se an invocation of his
Fifth Amendment rights, requiring all interrogation to cease
(US Const, Ams V, XIV).

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — WAIVER — CUSTODIAL
   INTERROGATION.

The Fifth and Fourteenth Amendments require a clear demon-
stration of waiver of the right to counsel once an accused has
asked for it, and such clarity is not apparent when an accused's
request for counsel is met by silence or inaction for a matter of
days; nor does it exist when a defendant's request is followed by
a move to solitary confinement, no matter what the reason (US
Const, Ams V, XIV).

6. CRIMINAL LAW — ASSISTANCE OF COUNSEL — WAIVER — CUSTODIAL
   INTERROGATION.

Use of confessions against defendants who had expressly re-
quested counsel and were subjected to custodial interrogation
without the assistance of counsel violated their rights under
the Fifth and Fourteenth Amendments where neither defen-
dant initiated the conversations from which their inculpatory
remarks emerged, the police were aware that counsel had been
appointed to represent one defendant and had filed an appear-
ance, and the other defendant had expressed his desire to speak
with an attorney to the chief assistant prosecutor, who then
left, after which the police continued to talk with the defendant
(US Const, Ams V, XIV).

*Frank J. Kelley,* Attorney General, and *Robert
A. Derengoski,* Solicitor General, for the people.

*L. Brooks Patterson,* Prosecuting Attorney, *Rob-
ert C. Williams,* Chief Appellate Counsel, and
*Lawrence J. Bunting,* Assistant Prosecuting Attor-
ney, for the people in *Paintman.*

*Michael W. LaBeau,* Prosecuting Attorney, and

*James G. Petrangelo,* Assistant Prosecuting Attorney, for the people in *Conklin.*

State Appellate Defender (by *P. E. Bennett* and *Karla Kendall,* Assistant Defender, for defendant Paintman and *Norris J. Thomas, Jr.,* Chief Deputy Defender, for defendant Conklin).

FITZGERALD, J. We are asked in these two cases to consider the admissibility of a statement made by an accused in police custody who had asked for an attorney. Each defendant had requested counsel at least twice after being arrested and advised of his *Miranda*[1] rights, and each later made inculpatory statements without having conferred with an attorney.[2]

We reverse the convictions and remand for new trials, at which the statements may not be admitted.

I

Defendant Paintman was sentenced to mandatory concurrent terms of life imprisonment after a jury convicted him of four counts of first-degree murder.[3] The case involved the fatal shootings of three adults and a child at an apartment in Southfield.

Prior to trial, defendant moved to suppress a

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] The record of the *Walker* hearing (fn 5, *infra)* in the case of defendant Conklin contains an ambiguous reference to a conversation between defendant and an attorney. Defendant was asked by his attorney whether "your attorney ever advised you with regard to the giving of any statements?" Defendant replied, "Yes, he told me not to give any." It is unclear as to where, when and by whom that advice was offered.

[3] MCL 750.316; MSA 28.548.

statement he allegedly[4] gave police on March 1, 1976, three days after his arrest. The trial court ruled, following a *Walker*[5] hearing, that the statement should be excluded because it was involuntary. The Court of Appeals reversed, stating, "[W]e are left with a definite and firm conviction that the statements of defendant-appellee of March 1, 1976 were voluntarily given and may be admitted at trial." The Court cited *People v McGillen #1*, 392 Mich 251; 220 NW2d 677 (1974). Defendant's motion for rehearing was granted, but the Court of Appeals affirmed its prior order. This Court denied defendant's application for leave to appeal the interlocutory order.[6]

Following his convictions, Paintman appealed as of right to the Court of Appeals, which affirmed. The Court refused to consider the admissibility of the statement, saying that the question had been addressed in the interlocutory appeal and that that ruling "is the law of the case and is controlling".[7] This Court granted leave to appeal.[8]

Defendant Conklin was sentenced to life in prison after a jury convicted him of the armed robbery[9] of a gasoline station in Monroe. Prior to trial, a *Walker*[10] hearing was held in response to defendant's motion to suppress a confession he gave sheriff's officers on July 22, 1976, nine days after his arrest.

---

[4] A police lieutenant prepared the statement from memory following the conversation with defendant Paintman. Defendant disputed its contents.

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[6] 397 Mich 885 (1976). Chief Justice THOMAS G. KAVANAGH and Justice LEVIN would have granted leave to appeal.

[7] *People v Paintman*, 92 Mich App 412, 416; 285 NW2d 206 (1979).

[8] *People v Paintman*, 408 Mich 896 (1980).

[9] MCL 750.529; MSA 28.797.

[10] See fn 5.

The trial court denied defendant's motion, holding that the statement had been made voluntarily and in compliance with *Miranda.* The confession subsequently was admitted at trial. The Court of Appeals affirmed defendant's conviction in an unpublished per curiam opinion. Rehearing was denied. This Court granted defendant's delayed application for leave to appeal.[11]

## II

The basic rights to be afforded an accused in police custody were spelled out by the United States Supreme Court in *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). These rights were further refined in subsequent opinions.[12] The most recent explication of *Miranda* and its progeny is *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981). In *Edwards,* the Court re-emphasized the importance of the right to counsel during custodial interrogation.

Edwards was arrested on charges of murder, robbery and burglary, and was taken to the police station and advised of his *Miranda* rights. After the defendant indicated that he understood his rights and was willing to submit to questioning, he was told he had been implicated by another suspect. The defendant denied involvement, presented an alibi and sought to make a "deal". He subsequently said he wanted to talk with an attorney and questioning ceased. However, police detectives appeared at the county jail the next day to see

---

[11] *People v Conklin,* 408 Mich 958 (1980).

[12] See, for example, *Rhode Island v Innis,* 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980); *Fare v Michael C,* 442 US 707; 99 S Ct 2560; 61 L Ed 2d 197 (1979); *North Carolina v Butler,* 441 US 369; 99 S Ct 1755; 60 L Ed 2d 286 (1979); *Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977); *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975).

Edwards. Defendant said that he didn't want to talk with the officers, but was told by a jail guard that "he had" to do so.

After the detectives advised Edwards of his *Miranda* rights, defendant indicated that he was willing to talk if he first could hear the tape-recorded statement of his alleged accomplice. After listening to the statement for a few minutes, defendant said he would talk as long as his own remarks were not taped. Edwards thereafter implicated himself.

The Arizona Supreme Court said that Edwards had invoked his right to remain silent and his right to counsel, but subsequently had waived both. The court concluded that the confession and waiver were voluntarily and knowingly made.

The United States Supreme Court reversed, holding that the use of the confession at trial violated Edwards' rights under the Fifth and Fourteenth Amendments. The Court noted that although it had held in previous cases that an accused may waive *Miranda* rights, "the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel * * *." *Edwards,* p 484. The Court then set down the rule governing the waiver of the right to counsel once it has been invoked:

"[A]n accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel *has been made available* to him, *unless the accused himself initiates* further communication, exchanges or conversations with the police." *Id.* (Emphasis added.)

The Court said that the Arizona courts had applied an erroneous standard in determining

whether there had been a valid waiver. "[W]aivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Id.,* p 482. The question of "voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries", the Court said. *Id.,* p 484.

A valid waiver cannot be established merely by showing that an accused who has asked for an attorney "responded to further *police-initiated custodial interrogation* even if he has been advised of his rights", the Court said. (Emphasis added.)

We hold that *Edwards* is controlling in the cases at bar and mandates reversal of the convictions.

### III

The facts of *Paintman* and *Conklin* are strikingly similar to the facts of *Edwards* and even more dramatic.

Edwards requested counsel when questioned by police following his arrest, as did Paintman and Conklin. However, the latter two defendants again asked for attorneys when arraigned; Edwards' confession apparently preceded his arraignment. Paintman's statement came three days after he twice asserted his right to counsel. Conklin's statement came nine days after his arrest and initial request for counsel, and seven days after his arraignment. In addition, officers were aware at the time Conklin confessed that he was represented by counsel, but did not contact the attorney. "I'm not required to" was the deputy sheriff's response when asked about the failure to alert counsel.

Alleged accomplices were involved in both *Paintman* and *Conklin,* as was the situation in *Edwards.*

Taped statements by the accomplices were played to both Edwards and Paintman prior to their confessions. In *Conklin,* defendant was placed in a room with his younger alleged accomplice to "clear things up" just prior to defendant's statement. There was testimony that before confessing, Conklin had discussed with officers the possibility of leniency for the accomplice.

The Supreme Court has recognized the inherent pressures on an accused undergoing custodial interrogation and the critical role that counsel plays in guarding against erosion of Fifth Amendment rights.

"Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts. For this reason, the Court fashioned in *Miranda* the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." *Fare v Michael C,* 442 US 707, 719; 99 S Ct 2560; 61 L Ed 2d 197 (1979).

The pressure on Edwards seemingly was of less intensity and of shorter duration than that on Paintman and Conklin.

Paintman was an admitted heroin addict with a $60 to $80 daily habit. He suffered withdrawal symptoms in the days preceding his statement. He was the target of derisive comments such as "baby killer" from both inmates and jail personnel because one of his alleged victims was a young child. There also was testimony about Paintman's suicidal mood. Further, as was the case in *Edwards,* Paintman told jail personnel prior to making his statement that he didn't wish to talk with police.

That desire was answered by detectives appearing at the jail later in the day.

Conklin was placed in a line-up the day after his arrest and spent most of his time in solitary confinement following his request for an attorney. He was taken out of the maximum security area after he confessed. There was testimony that the transfers were administrative in nature and unrelated to his initial refusal to talk with officers or his subsequent confession.

The *Edwards* Court did not hold that once an accused has asked for counsel the right cannot be abandoned without an attorney first being involved, nor do we. What we do hold is that the Fifth and Fourteenth Amendments require a clear demonstration of waiver. Such clarity is not apparent when an accused's request for counsel is met by silence or inaction for a matter of days. Nor does it exist when a defendant's request is followed by a move to solitary confinement, no matter what the reason for the transfer.

The facts adduced at the trials of these two cases do not fulfill the spirit of *Miranda* nor comport with the policies articulated in *Edwards.*

Neither Paintman nor Conklin *initiated* the conversations from which their inculpatory remarks emerged. The statements came after defendants expressly requested counsel when confronted by officers and questioned. There is no doubt that both Paintman and Conklin were subjected to custodial interrogation within the meaning of *Miranda.* Were that not the case, there would be no need to reach the question of waiver.[13]

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a

[13] *Rhode Island v Innis,* 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 444.

Paintman specifically had informed police officers prior to their arrival at the jail that he didn't wish to talk. Nonetheless, officers had him brought to an interview room. Conklin was taken out of solitary confinement and placed in a room with his younger alleged accomplice prior to his statement.

The United States Supreme Court has recognized that custodial interrogation by police may take different forms: "We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v Innis,* 446 US 291, 300-301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

The *Edwards* Court emphasized, and we hold, that it is inconsistent with *Miranda* and its progeny for authorities to instigate a reinterrogation of an accused in custody who has clearly asserted the right to counsel. There is little doubt that both Paintman and Conklin clearly asserted their rights to counsel. In fact, their resistance to questioning continued unabated for a period of days.

In Conklin's case, authorities were not only aware that he had requested counsel, but that counsel had been appointed and had filed an appearance. In Paintman's case, he first indicated his desire to speak with an attorney in response to a direct question by the chief assistant prosecutor.[14] The prosecutor then left, but police continued to talk with defendant.

Of what significance is invocation of a cherished

---

[14] A tape-recorded statement by Paintman's alleged accomplice was played for defendant in the prosecutor's office. During a break in the playing, defendant was asked if he wished to speak with an attorney. "Certainly I want to talk to a lawyer", defendant replied.

constitutional right if it is ignored by the hearer and, in fact, only seems to exacerbate the defendant's plight? As the time gap increases between the embracing of the right and its fulfillment, the certainty of its existence must surely dim.

*Miranda* becomes meaningless rhetoric in the face of a request for counsel that matures only in form but not in substance.

"Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights." *Miranda,* 476.

## IV

The *Edwards* Court took pains to establish that it was not announcing new law, but only clarifying further the dictates of existing law.

"Because the use of Edwards' confession against him at his trial violated his rights under the Fifth and Fourteenth Amendments *as construed* in *Miranda v Arizona, supra,* we reverse the judgment * * *." (Emphasis added.) *Edwards,* 480.

The Court later recited a parade of cases that supported the proposition of *Miranda* that "the right to counsel was a significant event and that once exercised by the accused, 'the interrogation must cease until an attorney is present' ".

The Court concluded the discussion by noting that "[w]e reconfirm these views and to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at

their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel". *Id.,* 485.

Thus, it is unnecessary to analyze the question of retroactivity under traditional standards.

In view of our decision to reverse the defendants' convictions and remand these cases for new trials, we do not decide the other issues raised.

Reversed and remanded.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.